**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF IDAHO**

| | |
|---|---|
| IN RE:<br><br>**DEBORAH KAY TITUS,**<br><br>Debtor. | Case No. 24-00014-NGH<br><br>Chapter 7 |

**MEMORANDUM OF DECISION**

Deborah Kay Titus ("Debtor") filed a motion to compel abandonment of her residence (the "Property") under § 554(b).[1]  Doc. No. 19.  The chapter 7 trustee, Patrick Geile ("Trustee"), objected to the motion.  Doc. No. 21.  The Court held an evidentiary hearing on January 22, 2025, at which time the Court took the matter under advisement.  The following decision resolves the matter.

**BACKGROUND**

Debtor purchased the Property in 2003.  She financed the purchase with a loan secured by a deed of trust encumbering the Property.  After Debtor experienced several hardships, she and Yvonne and James Reed entered into an agreement.[2]  In exchange for a 75% ownership interest in the Property, the Reeds paid off the remaining loan balance on the Property.  To memorialize their agreement, the parties executed a document titled

---

[1] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S.C. §§ 101–1532.  Additionally, all citations to "Rule" are to the Federal Rules of Bankruptcy Procedure.

[2] Yvonne Reed is Debtor's sister and James Reed is Debtor's brother-in-law.

MEMORANDUM OF DECISION - 1

"Co-Ownership and Nominee Agreement" on June 30, 2006 (the "Agreement"). Ex. 100. Debtor consulted an estate planning attorney to draft the Agreement. The Agreement was recorded at the Canyon County Recorder's office on September 28, 2012.

The Agreement provides in relevant part that "as a result of the payoff of the . . . loan, Reed shall own seventy five percent (75%) interest and Titus the remaining twenty five percent (25%)" in the Property. If Debtor did not execute a deed to transfer the Reeds their ownership interest at the time the parties executed the Agreement, Debtor was to be "considered a nominee owner for Reed as to their 75% ownership interest." The Agreement then sets forth the parties' rights and responsibilities regarding the Property and imposes certain limitations on its use. Section 6 of the Agreement is titled "Nominee Ownership and Limited Power of Attorney" and provides the following:

> a. Reed, by the execution of this Agreement, jointly and severally, does irrevocably constitute and appoint Titus, with full power of substitution, as their true and lawful attorney, in Reeds name, place and stead, to execute, acknowledge, swear to and file (i) all instruments which effectuate the provisions of any part of this Agreement or any amendment to this Agreement; and (ii) all instruments which enable the parties to maintain ownership of the property in accordance with the terms of this Agreement.
>
> b. The power of attorney granted herein shall be deemed to be coupled with an interest and shall be irrevocable and survive the death or legal incompetency of any party to this Agreement.
>
> c. If title to the property is left of record entirely in the name of Titus and if no deed is recorded to show the seventy five percent (75%) ownership interest of Reed, then Titus agrees that she is the nominee owner as to the seventy five percent (75%) interest for Reed. Titus agrees as such nominee owner in that event that she will always keep Reed notified as to any tax, zoning, insurance or other matter that would in any

MEMORANDUM OF DECISION - 2

> material way effect their ownership interest in the property. Reed, at any time, may require Titus to execute and deliver a deed conveying with standard warranties, but without any title insurance, to them their undivided seventy five percent (75%) ownership interest in the Residence property.

Since its execution, Debtor and the Reeds have substantially complied with the terms of the Agreement, including, for example, paying their respective share of the property taxes. The title to the Property was in Debtor's name on the petition date. Debtor's schedule A/B lists a 25% ownership interest in the Property. Debtor estimates the value of her interest is $92,250.

In February 2024, Trustee filed a notice of assets instructing creditors to file a proof of claim. Doc. No. 16. Thereafter, Debtor moved for an order abandoning the Property from property of the estate pursuant to § 554(b) and Rule 6007. Debtor claims she has only a 25% interest in the Property, which is fully exempt. After filing her motion to compel abandonment, Debtor filed an amended Statement of Financial Affairs ("SOFA"). Doc. No. 35. Her original SOFA indicated she did not hold or control any property owned by another, including property held in trust. Debtor stated she misunderstood the question when she filed her initial SOFA, believing the question referred to property titled in someone else's name. Debtor's amended SOFA reflects the Reeds' 75% interest in the Property.

**ANALYSIS**

    **A.    Abandonment**

` Under § 554(b), "[o]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome

MEMORANDUM OF DECISION - 3

to the estate or that is of inconsequential value and benefit to the estate." An order compelling the abandonment of property is the exception, not the rule. *See In re Garcia*, 521 B.R. 680, 684 (Bankr. D. Idaho 2014). As the moving party, Debtor bears the burden to establish that the Property should be abandoned.

Here, Debtor asserts the Reeds' 75% interest in the Property is held in trust and she is the owner in name only as to that 75% interest. As such, Debtor believes the 75% interest held in trust is not property of the estate, only her 25% interest came into the estate, and it is of inconsequential value given her homestead exemption. The Trustee does not disagree that if the Debtor indeed holds only a 25% interest in the Property, it is of inconsequential value to the estate and could be abandoned. However, he argues 100% of the Property is property of the estate as Debtor is the titled owner and any purported transfer of interest via the Agreement was ineffectual.[3]

### 1. Property of the Estate

To assess to what extent the Property is property of the estate, the Court turns to § 541. Section 541(a) provides that the commencement of a case creates an estate comprised of "all legal or equitable interest of the debtor in property as of the commencement of the case." However, under § 541(d) property in which the debtor holds only legal title and not an equitable interest, such as property held in trust, is

---

[3] In addition to disputing the creation of a trust, Trustee asserts the Agreement was insufficient to effectuate a transfer of title to the Reeds because it does not include their complete address as required by Idaho Code § 55-601. Debtor does not dispute that she is the sole titled owner and has not executed a deed to transfer the Reeds their 75% interest. Instead, Debtor asserts she holds a 25% interest in the property and the remaining 75% interest is held in trust with the Reeds as beneficial owners of that interest.

MEMORANDUM OF DECISION - 4

property of the estate "only to the extent of the debtor's legal title . . . but not to the extent of any equitable interest . . . that the debtor does not hold." *See In re Woods*, 386 B.R. 758, 762–63 (Bankr. D. Idaho 2008).

While federal law controls what is and is not property of the estate, bankruptcy courts look to the applicable state law to determine the nature and extent of a debtor's interest in property. Therefore, the Court turns to Idaho law. In Idaho, there is a presumption that the "title holder of real property owns it." *Hopkins v. Martinez (In re Espino)*, 648 B.R. 235, 243 (Bankr. D. Idaho 2022). "Because of this presumption, '[one] who would claim the ownership of property of which the legal title stands of record in another, or that the same is held by such person in trust for the one so claiming, must establish such claim by evidence that is clear, satisfactory and convincing.'" *Id.* (quoting *Russ Ballard Family Achievement Inst. v. Lava Hot Springs Resort, Inc.*, 548 P.2d 72, 79 (Idaho 1976)) (alteration in original). Thus, the Court must decide if there is clear, satisfactory, and convincing evidence that Debtor holds 75% of the Property in trust for the Reeds.

In Idaho, in order to establish a trust, the "settlor must manifest an intent to create a trust, and '[t]here must be certainty . . . as to the property to be subjected to the trust, the identity of the beneficiaries, and the manner in which the trust [property] is to be administered and used.'"[4] *Int'l Rescue Comm. v. Mohammed (In re Wylie St. Emergency*

---

[4] A trust in real property must also satisfy the statute of frauds to be enforceable. Under Idaho Code § 9-503, "[n]o estate or interest in real property . . . nor any trust or power over or concerning it . . . can be created, granted, assigned, surrendered, or declared" unless by operation of law or a conveyance or
(Continued)

MEMORANDUM OF DECISION - 5

*Fund)*, 537 P.3d 30, 38–39 (Idaho 2023) (quoting *Estate of Hull v. Williams*, 885 P.2d 1153, 1159 (Idaho Ct. App. 1994)) (first alteration in original).  Provided the words "show clear intent to transfer legal title to the trustee to hold the beneficial interest for a third person,"[5] no particular words are required to create a trust.  *Id.* at 38.

Trustee argues the language of the Agreement created an agency relationship, not a trust.  In general, an agency relationship, including a grant of power of attorney, does not give rise to a trust under Idaho law.  *See Murray v. Woodman (In re Woodman)*, 451 B.R. 31, 41 (Bankr. D. Idaho 2011) (citing *DBSI/TRI V v. Bender*, 948 P.2d 151, 163-64 (Idaho 1997)).  Trustee argues that, like in *Bender*, Debtor created an agency relationship, not a trust.

In *Bender*, WSDC managed a number of projects on Bender's behalf.  When DBSI purchased the projects from Bender, the purchase was conditioned on WSDC's continued management.  DBSI and WSDC entered into several agreements attendant to WSDC's management.  Eventually, DBSI sued Bender and WSDC.  DBSI claimed that WSDC breached its fiduciary duties.  The trial court determined the applicable statute of limitations had run, but DBSI argued it was tolled because there was a trust relationship between WSDC and DBSI due to WSDC's exclusive possession of the project assets.

---

other writing that is signed by the party to be charged.  The parties do not dispute that the Agreement satisfies the statute of frauds.

[5] "If the owner of property declares himself or herself the trustee of the property for the benefit of one or more others, or for the declarant and one or more others, a trust is created, even though there is no transfer of the title to the trust property to another and even though no consideration is received for the declaration.  A statute of frauds may require a signed writing in order for a declaration of trust to be enforceable." Restatement (Third) of Trusts § 10 cmt. e (2003).

MEMORANDUM OF DECISION - 6

948 P.2d at 163.  The Idaho Supreme Court disagreed with DBSI.  "Although the duties attendant to an agency are frequently compared to those involved in a trust, an agency is not a trust." *Id.* at 164 (citation omitted).  The Idaho Supreme Court considered the "essential characteristics" of a trust: "separation of the legal title from the beneficial interest and the existence of fiduciary duties." *Id.* at 163–64.  *See also Int'l Rescue Comm. v. Mohammed (In re Wylie St. Emergency Fund)*, 537 P.3d 30, 38 (Idaho 2023).  In a trust, "the trustee is the holder of legal title to the property subject to the beneficial interest of the beneficiary." *Id.* at 163.  Although WSDC owed DBSI a fiduciary duty, "WSDC did not hold title to the property for the beneficial interest of DBSI." *Id.* at 164.  The fiduciary duty arose out of an agency relationship.  The court reiterated "that the intent of the depositor [or settlor] to create a trust will prevail." *Id.* (citing *Vaughan v. First Fed.*, 378 P.2d 820, 825 (Idaho 1963)).  The agreements between WSDC and DBSI referred to "WSDC as an 'agent' not a 'trustee' and indicate[d], although not conclusively, that even DBSI did not intend to create a trust in allowing WSDC exclusive management." *Id.*

Here, Trustee asserts that the Agreement clarifies the nature of the relationship by referring to Debtor as a "nominee owner" and granting her power of attorney.  Trustee cites to *Edwards v. Mortg. Elec. Registration Sys., Inc.*, 300 P.3d 43 (Idaho 2013), for the proposition that a nominee means an agent.  *See also Gugino v. Canyon County (In re Bujak)*, 2012 WL 3260352, at *3 (Bankr. D. Idaho Aug. 8, 2012) (citing *Bender*, stating that if the agreement "refers to an 'agent,' not a 'trustee,' an agency relationship, and not a trust, was intended by the parties").  However, the 7th edition of *Black's Law*

MEMORANDUM OF DECISION - 7

*Dictionary*, which was cited by the court in *Edwards*, contains three definitions of "nominee." The definition cited by the court provides that a nominee is a "person designated to act in place of another, usu. in a very limited way." *See* 300 P.3d at 49. *Black's* also defines nominee as a "party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." Thus, use of the term nominee does not appear to necessarily mean agent.

However, even assuming "nominee" is synonymous with "agent," this case is distinguishable from *Bender*. Here, the Agreement is clear that Debtor considered the Reeds to hold a 75% interest in the Property at the time of execution. And, unlike WSDC in *Bender*, Debtor holds legal title to the Property. *See Indian Springs LLC v. Indian Springs Land Inv., LLC*, 215 P.3d 457, 465 (Idaho 2009) ("A trustee . . . is the owner of the property and deals with it as principal, as owner and as master, subject only to an equitable obligation to account to some person to whom he stands in the relation of trustee . . . ."). Put another way, the Agreement reflects the essential characteristics of a trust and Debtor's intent that so long as she held legal title to 100% of the Property, she would do so subject to the Reeds' 75% interest.

In short, Debtor's intent to create a trust was clear even with the use of the term "nominee owner" and the presence of the power of attorney provision. As such, the Court finds there is clear, satisfactory, and convincing evidence that Debtor holds 75% of the Property in trust for the Reeds, and, therefore, this 75% interest is not property of the estate.

MEMORANDUM OF DECISION - 8

**CONCLUSION**

Debtor has met her burden to demonstrate that abandonment is appropriate because her 25% interest in the Property is of inconsequential value to the estate. Accordingly, the Court will grant the motion to compel abandonment. Debtor's counsel shall submit an order consistent with this decision.

DATED:  February 20, 2025

_____
NOAH G. HILLEN
Chief U.S. Bankruptcy Judge